**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Fuentes-Fernandez & Company, PSC; Joseph Fuentes CPA** | **CIVIL NO. 07-00846 (RL)** |
| Plaintiffs | |
| **V.** | **BREACH OF CONTRACT AND TORTS** |
| **Caballero & Castellanos, PL; Mr. Orlando Rodriguez; and Mr. Juan Rivera.** | **PLAINTIFFS DEMAND JURY TRIAL** |
| Defendants | |

## AMENDED VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

     **COME NOW,** Plaintiffs Fuentes-Fernandez & Company, PSC and Joseph Fuentes, CPA in his individual capacity, through the undersigned legal counsel whom most respectfully alleges and prays:

### I. THE PARTIES

### PLAINTIFFS

1.    Plaintiff Fuentes-Fernandez & Company, P.S.C., (hereinafter "FFC") is a corporation duly organized and existing under the laws in the Commonwealth of Puerto Rico. FFC is a Certified Public Accountants and Consultants professional service corporation located at 161 San Jorge Street, Suite 401, San Juan, Puerto Rico 00911 and telephone number 787-406-2382. FFC is also a corporation duly authorized to do business in the District of Columbia, where it has its principal office at 1001 Connecticut Ave. N.W., Suite 300, Washington D.C. 20036 and

telephone number (202) 861-1904.

2.     Plaintiff Joseph Fuentes, CPA, in his individual capacity, is a citizen and resident of Virginia at 2163 N Pierce St. Arlington, Virginia 22209 and telephone number (787) 406-2382.

## DEFENDANTS

3.     Defendant, Caballero & Castellanos, PL (hereinafter "CC") is a corporation duly organized and existing under the laws of the state of Florida, with principal offices in 13055 SW 21 Street, Miramar, Florida 33027 and telephone number (305) 775-4821.

4.     Defendant, Orlando Rodríguez is an accountant and a resident of the Commonwealth of Puerto Rico. By his own admission, he presently resides temporarily at 3734 Loyola Dr., 260N, Kenner, Louisiana 70065.

5.     Defendant, Juan Rivera is an accountant and a resident of the State of Florida. His address is at 624 S Ridge St. Lakeworth, Fla. 33460, and by his own admission, he presently resides temporarily at 3616 Loyola Dr., 271S, Kenner, Louisiana 70065.

## II. <u>JURISDICTION AND VENUE</u>

6.     This Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) (1) and (C), and since the controversy arises between citizens from different states, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and pursuant to 28 U.S.C. § 1367(a) since is it the interest of judicial economy to adjudicate all related claims in one action under the doctrine of supplemental jurisdiction.

7.     Venue lies properly in this United States District Court for the District of Columbia, since a substantial part of the events and omissions giving rise to the present claim occurred in the District of Columbia, and because the controversy is between citizens and legal entities of

different States.  In the present case, the controversy is between citizens of the Commonwealth of Puerto Rico, the State of Virginia and the District of Columbia. A  Corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  Most of the damages and claims resulting from this action ultimately occurred in the District of Columbia, thus complying with the provisions of 28 U.S.C. §1391 (a) (2), (a) (3) and (c).

### III. <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

8.     All preceding paragraphs are incorporated herein by reference.

9.     On June 18, 2006, CC solicited from FCC, through an email (Exhibit 1), junior auditors who could render services for the Financial Recovery Support Services at the Housing Authority of New Orleans (hereinafter HANO) as part of the Department of Housing and Urban Development (hereinafter HUD). CC was rendering services to HANO and needed auditors to work on, among other things, **analyzing transactions**. (Exhibit 1)

10.    On June 19, 2006, through another e-mail (Exhibit 2), CC requested from FCC the above mentioned auditor's resumes in order to send the same to HUD for the corresponding processing.

11.    On June 20, 2006, through email (Exhibit 3), CC offered compensation proposals to FFC for each one of the two auditors: forty five dollars ($45.00) an hour, with a daily per diem of two hundred thirty dollars ($230.00); the above auditors were entitled to a travel budget of up to six hundred dollars ($600.00) for every two weeks. CC also mentioned to FCC in the same email that said parties' long term objective would be to enter into a 2 or 3 year contract with Plaintiff FFC. (Exhibit 3)

12.    On the same date, FFC, accepting the terms and conditions expressed therein in Exhibit 3, proceeded to send two resumes of auditors that would begin rendering services to HANO in

New Orleans on June 26, 2006. Moreover, in Exhibit 4, FCC & CC agreed to send the requested auditors to New Orleans "to start on Monday".

13.   Consequently, defendant CC's subsequent communications with FFC acknowledge and clearly establish that a contractual relationship between Plaintiff FFC and the named defendants had commenced.

14.   Between June 26, 2006 and July 2006 FFC began to render the corresponding services with two of its auditors in New Orleans.

15.   On July 18, 2006, FFC and CC memorialized their agreement through a Letter of Intent (hereinafter the "LOI") which specified the period of time in which FFC would be rendering professional services for HANO as part of the original contract that was entered into between FFC and CC dated June 20, 2006.

16.   The specified period of time stated in the LOI was three (3) years, so the termination date of the contract would be August 17, 2009. (Exhibit 5)

17.   In the aforesaid LOI, FFC agreed to subcontract and assign for the solicited task, two staff junior auditors (subcontracting another one later) at a rate of forty five dollars ($45.00) an hour, with a daily per diem of two hundred thirty dollars ($230.00); said junior auditors were entitled to a travel budget of up to six hundred dollars ($600.00) for every two weeks, consistent with CC's previous proposal of June 20, 2006 in Exhibit 3.

18.   In the LOI, CC figured as the prime contractor and FFC as a subcontractor.

19.   Payment to FFC was due every thirty (30) days. The HANO contract number is IBF 06-742-06-07.

20.   The dollar amount of the agreement is five hundred thousand dollars ($500,000.00) per year; therefore, the total value of the contract is one million and five hundred thousand dollars ($1,500,000.) for the duration of the 3 year term.

21.    The above LOI was signed by Plaintiff Joseph Fuentes on behalf of FFC, notarized and sent to CC the same date it was sent: **July 18, 2006**.

22.    Since HANO requires that all contract regarding subcontracted work shall be notified in five (5) days after receipt of the signed contract between HANO and the primary contractor, in the present case, defendant CC, FFC immediately forwarded a copy of the LOI to HANO's Compliance Officer at the Department of Procurement and Contracts in Washington, D.C.

23.    On August of 2006, FCC signed subcontractor agreements with the junior auditors, herein defendants Orlando Rodriguez and Juan Rivera, whom were already rendering services in New Orleans pursuant to the terms and conditions that FFC and CC had established and accorded in Exhibit 3.  (Exhibit 6)

24.    In each one of the above mentioned subcontracts, FFC clearly represented to said defendants that FFC's Agreement with CC of June 20, 2006, was the "Prime Contract" to provide services in relation to HANO.

25.    The terms and conditions of the "Prime Contract" were incorporated into the subcontracts by reference.

26.    Even though FCC fully complied at all times with every material obligation that it assumed in the primary agreement that FFC entered into with CC, CC repeatedly failed to honor its obligation to pay FFC any pending invoice in 30 days.

27.    Up to October 26, 2006, CC repeatedly breached its contractual obligations with FFC as they pertain to payment delays in all outstanding balances owed for services rendered by FFC.

28.    Defendant was always doing Plaintiffs false and malicious misrepresentations about payments problems with HANO when truly knew it that HANO had been paying at all times CC for their rendered services.

29.    At the time, FCC had no reason to doubt defendants.

30. Relying on the above representations, FCC continued to render services to CC until CC's misrepresentations were uncovered by Plaintiff.

31. On December 22, 2006, FFC received an email communication from CC notifying, without prior notice, the unilateral termination of the referred to contract due to an alleged "breach of trust" that FFC allegedly showed in dealing with CC under this contract with an effective date of March 2nd, 2007. (Exhibit 7-a).

32. On January 26th, 2007, FFC, through Joseph Fuentes, sent a letter to CC urging them to reconsider their position regarding the illegal termination of the contract, with the intention of resolving the controversy in an amiable and constructively manner. (Exhibit 7-b).

33. On February 1, of 2007, defendants Juan Rivera and Orlando Rodriguez also unilaterally terminated their respective contractual relationship with FFC. (Exhibit 8).

34. After CC and the above named auditors unilaterally terminated their respective contracts with FFC, Mr. Juan Rivera and Mr. Orlando Rodriguez were promptly hired by CC to render the same services that they previously rendered for FFC.

## IV. FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

35. Plaintiffs adopt by reference herein pleadings 1 through 34 in support of the present cause of action.

36. In order to prevail in a breach of contract claim, a Plaintiff must establish that a contract existed between plaintiff and defendant, that the defendant breached the terms and conditions of the contract, and that said breach, caused Plaintiff economic and monetary damages.

37. As the pleadings establish, CC is in breach of several terms and conditions of the contract they entered into with Plaintiff FFC, among them:

    a.  Consistently complying with its obligation to make payments within 30 days for the services rendered by FCC to CC; and

    b.  CC unilaterally terminated the referred to contractual relationship, without prior notice and without just cause.

38.   By failing to honor the contract, CC has willfully breached the terms and conditions of the agreement.

39.   FFC has tried unsuccessfully to maintain the good business relationship with CC, but to no avail.

40.   Also, in an apparent concerted contractual ambush with defendant CC, defendants Juan Rivera and Orlando Rodriguez terminated their respective contractual relationships with FCC, which makes said parties severally liable to damages caused to Plaintiffs up to the amount of $1,125,000, excluding attorney's fees and costs.

41.   Pursuant to section 9 of each of the two subcontracts, the contractors, herein defendants Juan Rivera and Orlando Rodriguez agreed to pay FFC any and all costs and expenses incurred by FFC in completing and enforcing any of the rights established in the agreement that was entered into between the above defendants and FFC.

42.   Due to the above breach of contract, Plaintiffs have suffered and will continue to suffer economic damages, including projected attorney's fees and costs, estimated in an amount of $1,122,187.

43.   As it pertains to defendant CC's breach of contract claim as pleaded in the present Amended Verified Complaint, CC's monetary liability to FFC for said claim is $1,496,250 including projected and approximated attorney's fees and costs, which remains outstanding and unpaid.

# V. SECOND CAUSE OF ACTION

## TORTIOUS INTENTIONAL INTERFERENCE WITH CONTRACT

44.    Plaintiffs adopt by reference herein pleadings 1 through 43 in support of the present cause of action.

45.    In order to prevail in an intentional interference with contract claim, Plaintiffs must establish that, a valid contract existed between the plaintiff and a third party existence, willful and intentional interference with the contract by the defendant, interference that proximately causes the plaintiff's injury; and actual damage or loss to plaintiffs.

46.    As the trier of fact will be able to ascertain from the facts above stated, Plaintiff suffered economic and consequential damages as a proximate cause of Defendant CC's intentional interference with the contractual relationship that existed between Plaintiff and the other individually named defendants:

   a.  Defendants Juan Rivera and Orlando Rodriguez had a contractual relationships with FFC;

   b.  CC has known about the existence of the above mentioned contractual relationships;

   c.  CC willfully and intentionally interfered with the above mentioned contractual relationships by hiring the defendants Juan Rivera and Orlando Rodriguez to render the same services that they were rendering to FFC; and

   d.   The aforementioned interference by CC is the proximate cause of FFC's injuries and damages.

47.    As a direct and proximate cause of Defendant's intentional interference with Plaintiff's contractual relationships, Plaintiffs have suffered economic and consequential damages which are estimated between $843,750.00 and $1,122,187.00.

48.    Plaintiffs also ask this Court to grant any other remedy, whether equitable or statutory in

nature, that can properly compensate Plaintiffs for Defendants' wrong doing.

## VI. <u>THIRD CAUSE OF ACTION</u>
## EMOTIONAL DISTRESS

49.    Plaintiff Joseph Fuentes adopts by reference herein pleadings 1 through 48 in support of the present cause of action.

50.    In order to prevail in a negligent infliction of emotional distress claim, Plaintiff must establish that the defendant engaged in a wrong doing actions or conduct in violation of a law, that Plaintiff Joseph Fuentes had suffered emotional distress; the defendants' conduct was the cause of this emotional distress.

51.    As stated in this document, CC engaged in wrong doing and unlawful conduct when it:

   a.    Openly and clearly breached a contract with FFC and intentionally interfered with the existing contract relationship between FFC and its subcontractors;

   b.    Since the plaintiff Mr. Joseph Fernandez is FFC's CEO and sole shareholder, he had suffered serious emotional distress; and

   c.    Defendants' conduct and actions have been the cause of the serious and continuous emotional distress on Mr. Joseph Fuentes' personal life.

52.    Specially, Mr. Fuentes' emotional distress, resulted in augmented anxiety, loss of sleep, affected marital relationship, economic losses, credit problems, and substantial loss of personal and professional productivity.

53.    Due to the above mentioned serious emotional distress, Plaintiff Joseph Fuentes has suffered and will continue to suffer economic damages, including projected attorney fees and costs, estimated at $611,800.

54.    Plaintiffs request this Court to grant any other remedy, whether equitable or statutory in nature that can properly compensate Plaintiffs for Defendants' wrong doing.

## VII. <u>FOURTH CAUSE OF ACTION</u>

## PUNITIVE DAMAGES

55.    Plaintiffs adopt by reference herein pleadings 1 through 54 in support of the present cause of action.

56.    In order to prevail with punitive damages claim, Plaintiffs must establish that defendant's conduct exhibited actual malice.

57.    As the pleadings established, Plaintiffs should be compensated through the imposition of punitive damages since;

    a.  CC entered in an intentional and malicious misrepresentation to FFC in order to delay the payments for its rendering services.

    b.  CC intentional and maliciously interfered with a contractual relationship between FFC and its subcontractors.

58.  CC always excused its payment delays to FFC claiming problem with the payments from the Department of Housing and Urban Development (HUD) and HANO, even when truly knew that said representation was false, as it pertains to HANO.

59.  Due to the above mentioned malicious and intentional Defendant's conduct Plaintiffs must be compensated for punitive damages including projected attorney's fees and costs, estimated in an amount at least $ 1,500,000,  for FFC and amount  of $500,000 for  Mr. Joseph Fuentes.

## VIII. <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment in favor of Plaintiffs, finding Defendants' joint and severally liable for the following Causes of Action:

1. For the first cause of action, Defendants must pay FCC the sum of $ 1,122,187.00 in principal, plus interest as established by law from March 2, 2007, until the date the above debt has been fully collected.

2. For the first cause of action, due to Defendants' Breach of Contract, which caused damages to FFC, Defendants must pay FFC the amount of $1,125,000.00, plus interests as established by law from March 2, 2007, until the date the above debt has been fully collected.

3. In addition, CC is bound with FFC to the specific performance of its obligations as set forth in the contract.

4. For the second cause of action damages should be awarded to FFC for the damages they suffered as a direct consequence of CC's intentional interference with FCC's subcontractors, who unilaterally terminated their respective contractual obligations with FCC and proceeded to work in a concerted effort with CC to terminate all contractual links between Plaintiffs and all the named defendants, causing damages as proximate cause of the above actions in the appropriate amount of $1,125,000 plus legal interest, costs and attorney's fees accrued thereon, and any other remedy that this Court may deem proper and just, whether statutory or equitable in nature.

5. For the third cause of action, damages should be awarded to Plaintiff Joseph Fuentes for the emotional distress suffered as a direct consequence of the Defendants' breach of contract and intentional interference with contract, that resulted in economic loss, affected credit, reputation problems, substantial loss of personal and professional productivity, and affected marital relationship, among other damages, in the amount of $611,800.00, plus costs, interests and attorney fees.

6. For the malicious and intentional conduct of Defendant CC, punitive damages must be

awarded to Plaintiffs FFC and Mr. Joseph Fuentes in the sum of $ 1,500,000, for FCC and 500,000 for Mr. Joseph Fuentes.

7.      Any other relief that is just and appropriate, including attorney fees and costs.

**RESPECTFULLY  SUBMITTED**.

In San Juan, this 11th day of July of 2007.

> **s/Alfredo Castellanos**
> USDCPR 208005
> Castellanos & Castellanos Law Firm, P.S.C.
> 161 San Jorge St., Suite 401
> San Juan, PR  00911
> Tel: 787-641-8447  Fax: 787-641-8450
> alfredo@castellanoslawfirm.com
> *Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Fuentes-Fernandez & Company, PSC;**<br>**Joseph Fuentes CPA** | **CIVIL NO:** |
| Plaintiffs | |
| **V.** | **BREACH OF CONTRACT**<br>**AND TORTS** |
| **Caballero & Castellanos, PL; Mr.**<br>**Orlando Rodriguez; and Mr. Juan**<br>**Rivera.** | **PLAINTIFFS DEMAND JURY TRIAL** |
| Defendants | |

**VOLUNTARY STATEMENT UNDER PENALTY OF PERJURY**

**TO THE HONORABLE COURT:**

     **NOW COMES,** Joseph Fuentes, of legal age, resident of Virginia, who states under penalty of perjury the following:

1. That my personal circumstances are as previously mentioned;

2. That the undersigned truly believes that all facts as pleaded in the Amended Verified Complaint are truthful to the best of my knowledge and financial calculation as a CPA.

     **WHEREFORE,** I submit the present statement under penalty of perjury in support of the remedy sought in the present complaint, for the benefit of this Court.

     **RESPECTFULLY SUBMITTED.**

In Washington, District of Columbia, on July 11th, 2007.

Mr. Joseph Fuentes

1




PLAINTIFF'S
EXHIBIT
1

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Sunday, June 18, 2006 12:35 AM
**To:** Fuentes - Fernandez
**Subject:** Re: Resumes

Hello Jose,

What I am looking for is junior auditor level people that will be primarily helping post transactions to the GL. However, the reason I want this level is because of the problems at the agfency, i need people that are used to looking for and analyzing transactions.

We will also be analyzing data and coming up with the best application of GAAP in recording balances. We have to start by reconciling beginning balances and gaining comfort over the balance sheet. We will continu to reconcile and post transactions for fiscal 2005 and subsequently fiscal 2006.

I have manager and senior manager level people coming onsite to help supervise.

we can discuss further but that si what I am looking for. Based on our earlier discussion, I am looking at bringing them in at 45/hr because of the limited space under the contract.


*Fuentes - Fernandez <joey@fuentes-fernandez.com>* wrote:

> Dear Elias,
>
> I wished I could be of more help from where I am ( Dubrovnik ), I have available seniors, whom are CPAs, that could assist you with your assignment in NO. Attach some CV I pull from a recent proposal(sorry for the informality), I have more that I could forward to you once I'm back in DC (26th). Please keep in touch & let me know how I can assist you.
>
> Regards,
>
> Joey Fuentes
>
> 1001 Connecticut Ave NW Suite 300
> Washington DC 20036
> Tel 202-861-1901 ext. 106
> fax 202-861-1904
> cell 787-406-2382
>
>
>
> Elias Castellanos, CPA
> Partner
> Caballero & Castellanos PL

Page 1 of 1

PLAINTIFF'S
EXHIBIT
2

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Monday, June 19, 2006 7:50 PM
**To:** Fuentes - Fernandez
**Subject:** Re: Resumes

Hello Jose,

HUD is asking for the resumes of the three people that will actually come on site.  Please send them to me ASAP so that I can get them to HUD.  I am looking at having them come in on monday.

There will be a long term procurement that I will have that we can discuss because as promised, I will fit a number of FTEs for you under the contract for two to three years.

*Fuentes - Fernandez <joey@fuentes-fernandez.com> wrote:*

> Dear Elias,
>
> I wished I could be of more help from where I am ( Dubrovnik ), I have available seniors, whom are CPAs, that could assist you with your assignment in NO. Attach some CV I pull from a recent proposal(sorry for the informality), I have more that I could forward to you once I'm back in DC (26th). Please keep in touch & let me know how I can assist you.
>
> Regards,
>
> Joey Fuentes
>
> 1001 Connecticut Ave NW Suite 300
> Washington DC 20036
> Tel 202-861-1901 ext. 106
> fax 202-861-1904
> cell 787-406-2382

Elias Castellanos, CPA
Partner
Caballero & Castellanos PL
13055 SW 21 Street
Miramar , Florida 33027
Phone: 305 775 4821
Fax: 954 827 3888




PLAINTIFF'S
EXHIBIT
3

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Tuesday, June 20, 2006 10:20 PM
**To:** Fuentes - Fernandez
**Subject:** Re: Resumes (fwd)

based on the GSA, I want to saty where you qouted me of 40 - 50 and will be happy with just taking the average of 45

the daily perdiem for hotel and meals is 230/day

the flights are budgeted for people to come back every two weeks with a round trip flight budget up to 600

I am staying at the Sheraton on Canal street and will try to work out a contract rate

If i can not I will look to other similar hotels and let you know

my long term objective is to put together a 2 to 3 year contract and pull together a number of FTEs during the contract period for you

I will give you the per diem and other costs based on that long term contract and may have to look to renting units rather than hotels to control costs

lets discuss further tomorrow

*Fuentes - Fernandez <joey@fuentes-fernandez.com>* wrote:

> Dear Elias,
>
> Attach 3 resumes of the staff that can be on-site next Monday. I'll forward more CV as needed. I intend to substitute Maria in mid July with another staff since she is committed in another engagement & I wanted someone, even thougth she is not junior, with a more seniority level until we have the staffing that is required.
>
> I will need to agree with you rates, per diem, expenses, etc. & your long-term objectives with this engagement so I can assist you properly & move forward with this project.
>
> I appreciate the opportunity of teaming with you on this project & look forward to assist you & meeting you soon.
>
> Regards,
>
> Joey Fuentes
>
>
> ===== Forwarded message from "Fuentes - Fernandez" =====
>
> \From: "Fuentes - Fernandez"


PLAINTIFF'S
EXHIBIT
4

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Tuesday, June 20, 2006 3:54 PM
**To:** Fuentes - Fernandez
**Subject:** Re: Resumes (fwd)

thanks

we need tto speak because i need them to start on monday

*Fuentes - Fernandez <joey@fuentes-fernandez.com>* wrote:

Elias,

Third resume that I couldn't attached in the previous email.

Joey

===== Forwarded message from "Fuentes - Fernandez" =====

\From: "Fuentes - Fernandez"
To: castellanos@cc-cpa.net
Subject: Re: Resumes (fwd)
Date: Tue, 20 Jun 2006 12:52:30 -0600 (MDT)

Dear Elias,

Attach 3 resumes of the staff that can be on-site next Monday. I'll forward more CV as needed. I intend to substitute Maria in mid July with another staff since she is committed in another engagement & I wanted someone, even thougth she is not junior, with a more seniority level until we have the staffing that is required.

I will need to agree with you rates, per diem, expenses, etc. & your long-term objectives with this engagement so I can assist you properly & move forward with this project.

I appreciate the opportunity of teaming with you on this project & look forward to assist you & meeting you soon.

Regards,

Joey Fuentes

===== Forwarded message from "Fuentes - Fernandez" =====

\From: "Fuentes - Fernandez"
To:
Subject: Re: Resumes



PLAINTIFF'S
EXHIBIT
5

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Tuesday, July 18, 2006 9:17 PM
**To:** Joey Fuentes
**Subject:** Re: LOI & CV

thanks for the document

Regarding Jonathan, does he have any more experience

Please try to include that in his resume because based on what I see, he is hard replacement for Maria

I am staying at the Hiton Riverside and was able to negotiate the federal rate of $103/night

*Joey Fuentes <joey@fuentes-fernandez.com> wrote:*

> Elias,
>
> Attach signed & notarized LOI, original should be delivered tomorrow morning by UPS, tracking # J193-745-870-8. Also, I'm attaching the CV of Jonathan Cruz, who will replace Maria from Monday. He worked until last week with the DOD-OIG, I personally interviewed him almost a month ago & is a good guy, really my first choice. He knows well Orlando & Juan Carlos since they studied & graduated from the same university. I'm planning to arrive to New Orleans on Sunday with him & return to DC Tuesday morning. I will make arrangement for him at the Sun Suite Hotel.
>
> Is there any special rate at your hotel? If so could you do me the favor of reserving two nights?
>
> Thanks,
>
> Joey

Elias Castellanos, CPA
Partner
Caballero & Castellanos PL
13055 SW 21 Street
Miramar , Florida 33027
Phone: 305 775 4821
Fax: 954 827 3888

**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Sunday, July 16, 2006 9:28 PM
**To:** Joey Fuentes
**Subject:** Re: Expense report & TS

Please fill out

In:

Prime - Caballero & Castellanos PL

IFB# - **06-742-06-07**

List of commodities/services - Financial Recovery Services Support

In dollar amount - $500,000/yr

Terms - Net 30

Description Work Item - Financial Recovery Services Support

Project Commencement Date - 8/28/2006

Project Completion Date - 8/27/2009

Please get back to me because I need to include as attachment and I am getting to printers this week

thanks

Elias Castellanos, CPA
Partner
Caballero & Castellanos PL
13055 SW 21 Street

HOUSING AUTHORITY OF NEW ORLEANS
DEPARTMENT OF PROCUREMENT AND CONTRACTS
DBE/WBE/Section 3 SUBCONTRACTORS, SUPPLIERS, CONSULTANTS - LETTER OF INTENT

To: _Caballero & Castellanos, PL_                    IFB# _06 - 742-06-07_
      Name of Prime Contractor

The undersigned will enter into a signed agreement with the Prime Contractor listed above within five (5) days after receipt of a signed contract executed by the Housing Authority of New Orleans. Copies of agreements including, but not limited to joint ventures, subcontracts, supplier agreements or purchase orders referencing the IFB, RFP, RFQ, or Purchase Order Number shall be forwarded to:

Housing Authority of New Orleans
2051 Senate Street, Room 202
New Orleans, Louisiana 70122
Attn: Compliance Officer

List commodities/services to be provided in connection with the above referenced contract:

_Financial Recovery Services Support_

Indicate the total dollar value and the terms of the agreement including, but not limited to joint ventures, subcontract, supplier or purchase order agreements for the above referenced contract:

$ _500,000 / yr._

Terms: _Net 30_

Indicate projected commencement and completion dates for the work listed above. Dates shall be given in terms of number of days from issuance of NTP.

| Description of Work/Item | Projected Commencement Date | Projected Completion Date |
|---|---|---|
| _Financial Recovery Services Support_ | _Aug. 18, 2006_ | _Aug. 27, 2009_ |

MBE/WBE/Section 3 Name
By: _____
      Signature   _Joseph A. Fuentes_
Printed or Typed Name
Title: _President - Fuentes-Fernandez & Company_

Date: _July 18, 2006_

If a corporate seal is not affixed, this document must be notarized.

Subscribed and sworn to

before me this _17_ day of _July_        (Notary Public)
                                          (Seal)
                                          20_06_
My Commission expires: _9-30-2009_

Date Executed: _____





1001 Connecticut Ave. N.W., Suite 300
Washington, DC 20036
Tel. (202) 861-1900 • Fax (202) 861-1904
www.fuentes-ffdandez.com

Member of:
American Institute of
Certified Public Accountants
Private Companies Practice Section
Certified Public Accountants
Virginia Society of
Certified Public Accountants
Private Companies Practice
Section Division for CPA Firms

<div style="background:black;color:white">**Standard Subcontractor Agreement**</div>

## SUBCONTRACTOR AGREEMENT

THIS SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of August 22, 2006 is entered into between FUENTES-FERNÁNDEZ & COMPANY, PSC ("FFC"), a Puerto Rico professional service corporation, and Orlando Rodríguez, an independent contractor ("Contractor"). Capitalized terms used herein without definition shall have the meaning ascribed to them in the Prime Contract (as defined below).

WHEREAS, FFC has entered into a Contract Agreement dated June 20, 2006 (the "Prime Contract") with the Caballero & Castellanos, PC (the "Client") pursuant to which the Client has engaged FFC to provide certain services to the Client relating to the Financial Recovery Support Services to the Housing Authority of New Orleans (HANO) (the "Engagement"); and

WHEREAS, FFC and Contractor desire to enter into an agreement pursuant to which FFC will retain the services of Contractor, and Contractor will agree to furnish its services to FFC in connection with the Engagement as a subcontractor to FFC under the Prime Contract.

NOW THEREFORE, in consideration of the foregoing premises, and the mutual covenants and agreement contained herein, the parties agree as follows:

1. PURPOSE OF ENGAGEMENT.

   (a)     FFC agrees to retain Contractor to perform services in connection with the Engagement (the "Services"), described in the Statement of Work attached hereto as Exhibit "A", as a subcontractor to FFC under the Prime Contract, and Contractor agrees to furnish FFC the Services on the terms and subject to the conditions set forth in this Agreement. In performing the Services, Contractor agrees to provide its own equipment, tools and other materials at its own expense. FFC may make its facilities and equipment available to Contractor to the extent necessary to perform the Services as the parties may mutually agree. It is expressly understood that Contractor is an independent contractor of FFC and that Contractor shall use its professional

3.    INCORPORATION OF PRIME CONTRACT.    The Prime Contract is hereby incorporated herein by reference and forms a part hereof. Unless the context clearly requires otherwise, Contractor agrees to be bound by, and perform the Services in accordance with, the terms and conditions of the Prime Contract, and references in the Prime Contract to FFC shall be deemed references to Contractor and references to the Client shall be deemed references to FFC for purposes of this Agreement. The terms and conditions of the Prime Contract shall take precedence in the event of a conflict with the terms and conditions of this Agreement.

4.    CONTRACTOR'S COMPENSATION.    During the term of this Agreement, FFC agrees to compensate Contractor as follows:

- $42,000 annually commencing on September 15, 2006, and payable thereof every two weeks on the 15th and 30th of each month.
- Bonus of $3,000 payable on December, 2006
- Retirement Plan 401K.(optional)
- Performance bonus, after first year of service on engagement
- Two weeks paid vacation annually when you have been with the firm for one year.
- All direct cost of professional development approved by the firm, plus per diem for travel, food and lodging related to professional development.
- Health Insurance (reimbursable up to $400 monthly)
- Cost of CPA Review Course

Time & Expense Report shall be e-mailed on the 15th & 30th of each month to:

Joseph A. Fuentes: joey@fuentes-fernandez.com with a copy to
Myrna Rivera     : myrna@fuentes-fernandez.com

Each time sheet submitted by Contractor will provide complete supporting detail for each day on which Services were performed by Contractor, including for each such day the name of the Providers who performed the Services, the dates of Services, hours worked at the negotiated rate(s) on each day, and receipts or other suitable detail concerning related expenses.

5.    OWNERSHIP OF MATERIALS RELATED TO SERVICES.    The parties agree that all ideas, know-how, processes, information, drawings, documents, designs, models, inventions, copyrightable material and other tangible materials authored, prepared, created, made, delivered, conceived or reduced to practice, in whole or in part, by Contractor in the course of providing the Services, including without limitation computer programs, computer systems, data and documentation (collectively, the "Works"), are the sole and exclusive property of FFC and shall be considered work made for hire. In the event any such Works do not fall within the

6.   **COMPLIANCE WITH FFC POLICIES AND BUDGETS.** Contractor agrees to perform the Services to the best of Contractor's abilities in accordance with FFC's policies and applicable budgets. Contractor's personnel performing the Services on FFC's premises shall comply with FFC's rules and regulations. Without limiting the foregoing, Contractor shall perform the Services in a timely and professional manner in accordance with applicable professional standards.

7.   **CONTRACTOR'S WARRANTIES.** Contractor warrants that:

(a)   Contractor's performance of the Services called for by this Agreement, including without limitation, the development and delivery of the Works, does not and shall not violate: (1) any applicable law, rule, or regulation; (2) any contracts with third parties; (3) or any third-party rights in any patent, trademark, copyright, trade secret, or any other proprietary or intellectual property right;

(b)   The Maximum Amount constitutes Contractor's good-faith estimate of Contractor's professional fees for the Services.

8.   **TERMINATION.**

(a)   FFC may terminate this Agreement at its convenience and without any breach by Contractor immediately upon written notice to Contractor without liability to Contractor other than to pay amount due.

(b)   In addition, either party may terminate this Agreement upon thirty (30) days written notice to the other, in the event the other party breaches a material term of this Agreement and fails to cure such breach within the thirty (30) day period.

9.   **INDEMNIFICATION.** Contractor hereby agrees to indemnify, defend and hold harmless FFC and any partner, principal, employee or agent thereof (each of the foregoing being hereinafter referred to individually as an "Indemnified Party") from and against any and all claims, liabilities, losses, expenses (including attorney's fees and legal expenses related to such defense), fines, penalties, taxes or damages (collectively "Liabilities") asserted by: (1) any third party against any Indemnified Party for (i) personal injury or property damage to the extent such Liabilities arise out of or result from the negligence or willful misconduct of Contractor in providing any Services; or (ii) the representations and warranties made by Contractor, or their breach; and (2) by the Client against any Indemnified Party to the extent such Liabilities arise out of or result from the Contractor's providing any Services, provided that Contractor's liability

10.    NON-EXCLUSIVITY.  During the term of this Agreement, FFC may engage the services of any other individual or company that competes with Contractor or offers services similar to those offered by Contractor, and any such engagements shall not be considered a breach of this Agreement.

11.    FFC OR CLIENT CONFIDENTIAL INFORMATION.  All information, documents, software, reports, data, records, forms and other materials developed by Contractor for FFC or its clients or obtained by or disclosed to Contractor in the course of performing any Services (including, but not limited to, client records) are the proprietary, confidential and trade secret information of FFC.  Contractor will deliver to FFC all tangible forms of such proprietary, confidential and trade secret information and all copies thereof (and all other property obtained from or through FFC) when FFC requests the same, or immediately upon termination of this Agreement, whichever occurs earlier.  Contractor agrees during the term of this Agreement and thereafter that it will take all steps reasonably necessary to hold FFC's and any of its client's proprietary, confidential and trade secret information in trust and confidence.

12.    INDEPENDENT CONTRACTOR.  Contractor agrees that Contractor's relationship with FFC is that of an independent contractor and nothing in this Agreement shall be construed as creating a partnership, joint venture or employer-employee relationship.  Contractor shall be solely responsible for complying with all applicable local, state and federal laws governing self-employed individuals, including but not limited to obligations such as payments of federal, state and local taxes, social security, disability and other contributions attributable to the rendition of Services hereunder to FFC.  Contractor shall indemnify, hold harmless and defend FFC from any and all claims, liabilities, damages, taxes, fines or penalties sought or recovered by any governmental entity, including but not limited to the Internal Revenue Service or any state taxing authority, arising out of Contractor's alleged failure to pay such taxes or make such contributions.  Nothing in this Agreement shall be deemed to constitute Contractor or FFC the agent of the other.  Neither Contractor nor FFC shall be or become liable or bound by any representation, act or omission whatsoever of the other.

13.    NON-ASSIGNABILITY.  Contractor shall not assign, transfer, or subcontract this Agreement or any of its obligations hereunder without FFC's express, prior written permission.

14.    NOTICES.  All notices permitted or required under this Agreement shall be in writing and shall be by personal delivery, a nationally recognized overnight courier service, facsimile transmission or certified or registered mail, return receipt requested.  Notices shall be deemed given upon the earlier of actual receipt or one (1) day after deposit with the courier service, receipt by sender of confirmation of electronic transmission or five (5) days after deposit

IF TO FFC:

Fuentes-Fernández & Company, PSC
1001 Connecticut Ave. NW Suite 300
Washington DC 20036
Attention: Joseph A. Fuentes-Fernández, CPA

IF TO CONTRACTOR:

HC-01 Box 6835
Aibonito Puerto Rico 00705
Attention: Orlando Rodríguez

15.    SEVERABILITY. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, impaired or invalidated, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.    GOVERNING LAW. This agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to the conflict of laws provisions thereof.

17.    INTEGRATION. This agreement constitutes the entire agreement of the parties hereto and supersedes all prior and contemporaneous representations, proposals, discussions, and communications, whether oral or in writing. This agreement may be modified only in writing and shall be enforceable in accordance with its terms when signed by each of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused to be signed by their duly authorized representatives, as of the day and year first above mentioned.

FUENTES-FERNÁNDEZ & COMPANY                    ORLANDO RODRÍGUEZ

By: _____                    By: _____
Name: Joseph A. Fuentes, CPA                   Name: Orlando Rodríguez
Title: President & CEO                          Title: Accountant/Auditor

EHXIBIT "A"

THIS DOCUMENT IS THE STATEMENT OF WORK ("SOW") AS DEFINED IN SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of August 22, 2006 (the "Effective Date"), between   ORLANDO RODRÍGUEZ ("Contractor"), and FUENTES-FERNÁNDEZ & COMPANY, PSC.

1.    PURPOSE OF PROJECT

CONTRACTOR WILL ASSIST, CABALLERO & CASTELLANOS IN PERFORMING FINANCIAL RECOVERY SUPPORT SERVICES FOR THE HOUSING AUTHORITY OF NEW ORLEANS.

2.    CONSULTANT'S RESPONSIBILITIES

THE CONTRACTOR WILL BE RESPONSIBLE TO PROVIDE, AMONG OTHER SERVICES, THE FOLLOWING SERVICES

- Transaction analysis and processing
- Data analysis and summarization
- Technical assistance in delivering new or revised accounting policies and procedures
- Accounting transactions classifications
- Special studies to improve accounting operations
- Accounting issues resolution
- Accounting internal control assessment or enhancement

3.    SCHEDULE

The term of the engagement extends from September 1, 2006, through August 31, 2009, on an as-needed basis.



Cohank Center, Suite 1401
352 Ponce de León Ave., San Juan, PR C'W10
Tel. (787) 782-1311 • Fax (787) 273-1484
www.fuentes-fernandez.com
Mailing: PO Box 194669
San Juan, PR 00919-4669

Member of:
American Institute of
Certified Public Accountants
Puerto Rico Society of
Certified Public Accountants
Virginia Society of
Certified Public Accountants
Private Companies Practice
Section Division for CPA Firms

**Standard Subcontractor
Agreement**

## SUBCONTRACTOR AGREEMENT

THIS SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of August 22, 2006 is entered into between FUENTES FERNÁNDEZ & COMPANY, PSC ("FFC"), a Puerto Rico professional service corporation, and Juan Carlos Rivera, an independent contractor ("Contractor"). Capitalized terms used herein without definition shall have the meaning ascribed to them in the Prime Contract (as defined below).

WHEREAS, FFC has entered into a Contract Agreement dated June 20, 2006 (the "Prime Contract") with the Caballero & Castellanos, PC (the "Client") pursuant to which the Client has engaged FFC to provide certain services to the Client relating to the Financial Recovery Support Services to the Housing Authority of New Orleans (HANO) (the "Engagement"); and

WHEREAS, FFC and Contractor desire to enter into an agreement pursuant to which FFC will retain the services of Contractor, and Contractor will agree to furnish its services to FFC in connection with the Engagement as a subcontractor to FFC under the Prime Contract.

NOW THEREFORE, in consideration of the foregoing premises, and the mutual covenants and agreement contained herein, the parties agree as follows:

1.  PURPOSE OF ENGAGEMENT.

(a)     FFC agrees to retain Contractor to perform services in connection with the Engagement (the "Services"), described in the Statement of Work attached hereto as Exhibit "A" , as a subcontractor to FFC under the Prime Contract, and Contractor agrees to furnish FFC the Services on the terms and subject to the conditions set forth in this Agreement.   In performing the Services, Contractor agrees to provide its own equipment, tools and other materials at its own expense.   FFC may make its facilities and equipment available to Contractor to the extent necessary to perform the Services as the parties may mutually agree.   It is expressly understood that Contractor is an independent contractor of FFC and that Contractor shall use its professional discretion in determining the best means by which to perform the Services.

2.     TERM.   The term of this Agreement shall begin on the date hereof and shall continue until the earlier of (i) termination of the Prime Contract or (ii) termination pursuant to Paragraph 8 hereof.

Page 1

3.  INCORPORATION OF PRIME CONTRACT.  The Prime Contract is hereby incorporated herein by reference and forms a part hereof.  Unless the context clearly requires otherwise, Contractor agrees to be bound by, and perform the Services in accordance with, the terms and conditions of the Prime Contract, and references in the Prime Contract to FFC shall be deemed references to Contractor and references to the Client shall be deemed references to FFC for purposes of this Agreement.  The terms and conditions of the Prime Contract shall take precedence in the event of a conflict with the terms and conditions of this Agreement.

4.  CONTRACTOR'S COMPENSATION.  During the term of this Agreement, FFC agrees to compensate Contractor as follows:

- $42,000 annually commencing on September 15, 2006, and payable thereof every two weeks on the 15th and 30th of each month.
- Bonus of $3,000 payable on December, 2006
- Retirement Plan 401K. (optional)
- Performance bonus, after first year of service on engagement
- Two weeks paid vacation annually when you have been with the firm for one year.
- All direct cost of professional development approved by the firm, plus per diem for travel, food and lodging related to professional development.
- Health Insurance (reimbursable up to $400 monthly)
- Cost of CPA Review Course

Time & Expense Report shall be e-mailed on the 15th & 30th of each month to:

Joseph A. Fuentes: joey@fuentes-fernandez.com with a copy to
Myrna Rivera         : myrna@fuentes-fernandez.com

Each time sheet submitted by Contractor will provide complete supporting detail for each day on which Services were performed by Contractor, including for each such day the name of the Providers who performed the Services, the dates of Services, hours worked at the negotiated rate(s) on each day, and receipts or other suitable detail concerning related expenses.

5.  OWNERSHIP OF MATERIALS RELATED TO SERVICES.  The parties agree that all ideas, know-how, processes, information, drawings, documents, designs, models, inventions, copyrightable material and other tangible materials authored, prepared, created, made, delivered, conceived or reduced to practice, in whole or in part, by Contractor in the course of providing the Services, including without limitation computer programs, computer systems, data and documentation (collectively, the "Works"), are the sole and exclusive property of FFC and shall be considered work made for hire.  In the event any such Works do not fall within the specifically enumerated works that constitute works made for hire under the United States copyright laws, Contractor hereby irrevocably, expressly and automatically assigns all right, title and interest worldwide in and to such Works to FFC, including, without limitation, all copyrights, patent rights, trade secrets, trademarks, moral rights and all other applicable proprietary and intellectual property rights.

**Fuentes-Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1001 Connecticut Ave, N.W., Suite 505  Washington, DC 20036 • Tel. (202) 861-1904 • Fax (202) 861-1904

6.      COMPLIANCE WITH FFC POLICIES AND BUDGETS. Contractor agrees to perform the Services to the best of Contractor's abilities in accordance with FFC's policies and applicable budgets.  Contractor's personnel performing the Services on FFC's premises shall comply with FFC's rules and regulations.  Without limiting the foregoing, Contractor shall perform the Services in a timely and professional manner in accordance with applicable professional standards.

7.      CONTRACTOR'S WARRANTIES. Contractor warrants that:

(a)      Contractor's performance of the Services called for by this Agreement, including without limitation, the development and delivery of the Works, does not and shall not violate: (1) any applicable law, rule, or regulation; (2) any contracts with third parties; (3) or any third-party rights in any patent, trademark, copyright, trade secret, or any other proprietary or intellectual property right;

(b)      The Maximum Amount constitutes Contractor's good-faith estimate of Contractor's professional fees for the Services.

8.      TERMINATION.

(a)      FFC may terminate this Agreement at its convenience and without any breach by Contractor immediately upon written notice to Contractor without liability to Contractor other than to pay amount due.

(b)      In addition, either party may terminate this Agreement upon thirty (30) days written notice to the other, in the event the other party breaches a material term of this Agreement and fails to cure such breach within the thirty (30) day period.

9.      INDEMNIFICATION. Contractor hereby agrees to indemnify, defend and hold harmless FFC and any partner, principal, employee or agent thereof (each of the foregoing being hereinafter referred to individually as an "Indemnified Party") from and against any and all claims, liabilities, losses, expenses (including attorney's fees and legal expenses related to such defense), fines, penalties, taxes or damages (collectively "Liabilities") asserted by: (1) any third party against any Indemnified Party for (i) personal injury or property damage to the extent such Liabilities arise out of or result from the negligence or willful misconduct of Contractor in providing any Services; or (ii) the representations and warranties made by Contractor, or their breach; and (2) by the Client against any Indemnified Party to the extent such Liabilities arise out of or result from the Contractor's providing any Services, provided that Contractor's liability pursuant to this clause (3) shall be limited to the same extent as FFC's liability to the Client may be limited by the terms of the Prime Contract. FFC shall promptly notify Contractor of any third party claim subject to indemnification hereunder and Contractor shall, at FFC's option, conduct the defense or settlement of any such third party claim at Contractor's sole expense and FFC shall cooperate with Contractor in connection therewith.

Fuentes-Fernández & Company, P.S.C.
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS

10.     NON-EXCLUSIVITY.   During the term of this Agreement, FFC may engage the services of any other individual or company that competes with Contractor or offers services similar to those offered by Contractor, and any such engagements shall not be considered a breach of this Agreement.

11.     FFC OR CLIENT CONFIDENTIAL INFORMATION.   All information, documents, software, reports, data, records, forms and other materials developed by Contractor for FFC or its clients or obtained by or disclosed to Contractor in the course of performing any Services (including, but not limited to, client records) are the proprietary, confidential and trade secret information of FFC.   Contractor will deliver to FFC all tangible forms of such proprietary, confidential and trade secret information and all copies thereof (and all other property obtained from or through FFC) when FFC requests the same, or immediately upon termination of this Agreement, whichever occurs earlier.   Contractor agrees during the term of this Agreement and thereafter that it will take all steps reasonably necessary to hold FFC's and any of its client's proprietary, confidential and trade secret information in trust and confidence.

12.     INDEPENDENT CONTRACTOR.   Contractor agrees that Contractor's relationship with FFC is that of an independent contractor and nothing in this Agreement shall be construed as creating a partnership, joint venture or employer-employee relationship. Contractor shall be solely responsible for complying with all applicable local, state and federal laws governing self-employed individuals, including but not limited to obligations such as payments of federal, state and local taxes, social security, disability and other contributions attributable to the rendition of Services hereunder to FFC. Contractor shall indemnify, hold harmless and defend FFC from any and all claims, liabilities, damages, taxes, fines or penalties sought or recovered by any governmental entity, including but not limited to the Internal Revenue Service or any state taxing authority, arising out of Contractor's alleged failure to pay such taxes or make such contributions. Nothing in this Agreement shall be deemed to constitute Contractor or FFC the agent of the other. Neither Contractor nor FFC shall be or become liable or bound by any representation, act or omission whatsoever of the other.

13.     NONASSIGNABILITY.   Contractor shall not assign, transfer, or subcontract this Agreement or any of its obligations hereunder without FFC's express, prior written permission.

14.     NOTICES.   All notices permitted or required under this Agreement shall be in writing and shall be by personal delivery, a nationally recognized overnight courier service, facsimile transmiss on or certified or registered mail, return receipt requested.   Notices shall be deemed given upon the earlier of actual receipt or one (1) day after deposit with the courier service, receipt by sender of confirmation of electronic transmission or five (5) days after deposit with the U.S. Postal Service.  Notices shall be sent to the addresses listed below, or to such other address as either party may specify in writing.

Fuentes-Fernández & Company, P.S.C.
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1004 Connecticut Ave. N.W. Suite 900 Washington DC 20036 · Tel (202) 861-1901 · Fax (202) 861 1904
www.fuentes-fernandez.com

IF TO FFC:

Fuentes-Fernández & Company, PSC
1001 Connecticut Ave. NW Suite 300
Washington DC 20036
Attention: Joseph A. Fuentes-Fernández, CPA

IF TO CONTRACTOR:

624 S Ridge St.
Lakeworth
Florida, 33460
Attention: Juan Carlos Rivera

15.     SEVERABILITY.  In the event that any term or provision of this Agreement shall
be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be
affected, impaired or invalidated, and each such term and provision of this Agreement shall be
valid and enforceable to the fullest extent permitted by law.

16.     GOVERNING LAW.  This agreement shall be governed by and construed in
accordance with the laws of the Commonwealth of Virginia, without regard to the conflict of
laws provisions thereof.

17.     INTEGRATION.  This agreement constitutes the entire agreement of the parties
hereto and supersedes all prior and contemporaneous representations, proposals, discussions, and
communications, whether oral or in writing.  This agreement may be modified only in writing
and shall be enforceable in accordance with its terms when signed by each of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused to be signed by their duly
authorized representatives, as of the day and year first above mentioned.

FUENTES-FERNÁNDEZ & COMPANY                          JUAN CARLOS RIVERA

By:                                                  By:
Name: Joseph A. Fuentes, CPA                         Name: Juan Carlos Rivera
Title: President & CEO                                Title: Accountant/Auditor

**Fuentes-Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1001 Connecticut Ave. NW Suite 300, Washington, DC 20036 • Tel. (202) 861-1900 • Fax (202) 861-1904
www.fuentesfernandez.com

EXHIBIT "A"

THIS DOCUMENT IS THE STATEMENT OF WORK ("SOW") AS DEFINED IN SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of August 22, 2006 (the "Effective Date"), between   JUAN CARLOS RIVERA ("Contractor"), and FUENTES-FERNÁNDEZ & COMPANY, PSC.

1.   PURPOSE OF PROJECT

CONTRACTOR WILL ASSIST, CABALLERO & CASTELLANOS IN PERFORMING FINANCIAL RECOVERY SUPPORT SERVICES FOR THE HOUSING AUTHORITY OF NEW ORLEANS.

2.   CONSULTANT'S RESPONSIBILITIES

THE CONTRACTOR WILL BE RESPONSIBLE TO PROVIDE, AMONG OTHER SERVICES, THE FOLLOWING SERVICES

- Transaction analysis and processing
- Data analysis and summarization
- Technical assistance in delivering new or revised accounting policies and procedures
- Accounting transactions classifications
- Special studies to improve accounting operations
- Accounting issues resolution
- Accounting internal control assessment or enhancement

3.   SCHEDULE

The term of the engagement extends from September 1, 2006, through August 31, 2009, on an as-needed basis.

Fuentes-Fernández & Company, P.S.C.
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1818 Connecticut Ave. N.W., Suite 300, Washington, DC 20036 • Tel. (202) 861-1905 • Fax (202) 861-1914
www.fuentes-fernandez.com



Fuentes Fernández & Company, P.S.C.
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS

1001 Connecticut Ave, N.W. Suite 360
Washington, DC 20036
Tel. (202) 861-1901 • Fax (202) 861-1904
www.fuentes-fernandez.com

Member of:
American Institute of
Certified Public Accountants
Puerto Rico Society of
Certified Public Accountants
Virginia Society of
Certified Public Accountants
Private Companies Practice
Section Division for CPA Firms

**Standard Subcontractor
Agreement**

## SUBCONTRACTOR AGREEMENT

THIS SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of July 24, 2006 is entered into between FUENTES-FERNÁNDEZ & COMPANY, PSC ("FFC"), a Puerto Rico professional service corporation, and **Jonathan Cruz**, an independent contractor ("Contractor"). Capitalized terms used herein without definition shall have the meaning ascribed to them in the Prime Contract (as defined below).

WHEREAS, FFC has entered into a Contract Agreement dated June 20, 2006 (the "Prime Contract") with the Caballero & Castellanos, PC (the "Client") pursuant to which the Client has engaged FFC to provide certain services to the Client relating to the Financial Recovery Support Services to the Housing Authority of New Orleans (HANO) (the "Engagement"); and

WHEREAS, FFC and Contractor desire to enter into an agreement pursuant to which FFC will retain the services of Contractor, and Contractor will agree to furnish its services to FFC in connection with the Engagement as a subcontractor to FFC under the Prime Contract.

NOW THEREFORE, in consideration of the foregoing premises, and the mutual covenants and agreement contained herein, the parties agree as follows:

1. PURPOSE OF ENGAGEMENT.

(a)     FFC agrees to retain Contractor to perform services in connection with the Engagement (the "Services"), described in the Statement of Work attached hereto as Exhibit "A", as a subcontractor to FFC under the Prime Contract, and Contractor agrees to furnish FFC the Services on the terms and subject to the conditions set forth in this Agreement. In performing the Services, Contractor agrees to provide its own equipment, tools and other materials at its own expense. FFC may make its facilities and equipment available to Contractor to the extent necessary to perform the Services as the parties may mutually agree. It is expressly understood that Contractor is an independent contractor of FFC and that Contractor shall use its professional discretion in determining the best means by which to perform the Services.

3. INCORPORATION OF PRIME CONTRACT. The Prime Contract is hereby incorporated herein by reference and forms a part hereof. Unless the context clearly requires otherwise, Contractor agrees to be bound by, and perform the Services in accordance with, the terms and conditions of the Prime Contract, and references in the Prime Contract to FFC shall be deemed references to Contractor and references to the Client shall be deemed references to FFC for purposes of this Agreement. The terms and conditions of the Prime Contract shall take precedence in the event of a conflict with the terms and conditions of this Agreement.

4. CONTRACTOR'S COMPENSATION. During the term of this Agreement, FFC agrees to compensate Contractor as follows:

- $38,000 annually commencing on July 31, 2006, and payable thereof every two weeks on the 15th and 30th of each month.
- Bonus of $3,000 payable on December, 2006
- Retirement: Plan 401K.(optional)
- Performance bonus, after first year of service on engagement
- Two weeks paid vacation annually when you have been with the firm for one year.
- All direct cost of professional development approved by the firm, plus per diem for travel, food and lodging related to professional development.
- Health Insurance (reimbursable up to $400 monthly)
- Cost of CPA Review Course

Time & Expense Report shall be e-mailed on the 15th & 30th of each month to:

Joseph A. Fuentes: joev@fuentes-fernandez.com with a copy to
Myrna Rivera    : myrna@fuentes-fernandez.com

Each time sheet submitted by Contractor will provide complete supporting detail for each day on which Services were performed by Contractor, including for each such day the name of the Providers who performed the Services, the dates of Services, hours worked at the negotiated rate(s) on each day, and receipts or other suitable detail concerning related expenses.

5. OWNERSHIP OF MATERIALS RELATED TO SERVICES. The parties agree that all ideas, know-how, processes, information, drawings, documents, designs, models, inventions, copyrightable material and other tangible materials authored, prepared, created, made, delivered, conceived or reduced to practice, in whole or in part, by Contractor in the course of providing the Services, including without limitation computer programs, computer systems, data and documentation (collectively, the "Works"), are the sole and exclusive property of FFC and shall be considered work made for hire. In the event any such Works do not fall within the

6.    COMPLIANCE WITH FFC POLICIES AND BUDGETS. Contractor agrees to perform the Services to the best of Contractor's abilities in accordance with FFC's policies and applicable budgets. Contractor s personnel performing the Services on FFC's premises shall comply with FFC's rules and regulations. Without limiting the foregoing, Contractor shall perform the Services in a timely and professional manner in accordance with applicable professional standards.

7.    CONTRACTOR'S WARRANTIES. Contractor warrants that:

(a)    Contractor's performance of the Services called for by this Agreement, including without limitation, the development and delivery of the Works, does not and shall not violate: (1) any applicable law, rule, or regulation; (2) any contracts with third parties; (3) or any third party rights in any patent, trademark, copyright, trade secret, or any other proprietary or intellectual property right;

8.    TERMINATION.

(a)    FFC may terminate this Agreement at its convenience and without any breach by Contractor immediately upon written notice to Contractor without liability to Contractor other than to pay amount due.

(b)    In addition, either party may terminate this Agreement upon thirty (30) days written notice to the other, in the event the other party breaches a material term of this Agreement and fails to cure such breach within the thirty (30) day period.

9.    INDEMNIFICATION. Contractor hereby agrees to indemnify, defend and hold harmless FFC and any partner, principal, employee or agent thereof (each of the foregoing being hereinafter referred to individually as an "Indemnified Party") from and against any and all claims, liabilities, losses, expenses (including attorney's fees and legal expenses related to such defense), fines, penalties, taxes or damages (collectively "Liabilities") asserted by: (1) any third party against any Indemnified Party for (i) personal injury or property damage to the extent such Liabilities arise out of or result from the negligence or willful misconduct of Contractor in providing any Services; or (ii) the representations and warranties made by Contractor, or their breach; and (2) by the Client against any Indemnified Party to the extent such Liabilities arise out of or result from the Contractor's providing any Services, provided that Contractor's liability pursuant to this clause (3) shall be limited to the same extent as FFC's liability to the Client may be limited by the terms of the Prime Contract. FFC shall promptly notify Contractor of any third

10.    NON-EXCLUSIVITY. During the term of this Agreement, FFC may engage the services of any other individual or company that competes with Contractor or offers services similar to those offered by Contractor, and any such engagements shall not be considered a breach of this Agreement.

11.    FFC OR CLIENT CONFIDENTIAL INFORMATION. All information, documents, software, reports, data, records, forms and other materials developed by Contractor for FFC or its clients or obtained by or disclosed to Contractor in the course of performing any Services (including, but not limited to, client records) are the proprietary, confidential and trade secret information of FFC. Contractor will deliver to FFC all tangible forms of such proprietary confidential and trade secret information and all copies thereof (and all other property obtained from or through FFC) when FFC requests the same, or immediately upon termination of this Agreement, whichever occurs earlier. Contractor agrees during the term of this Agreement and thereafter that it will take all steps reasonably necessary to hold FFC's and any of its client's proprietary, confidential and trade secret information in trust and confidence.

12.    INDEPENDENT CONTRACTOR. Contractor agrees that Contractor's relationship with FFC is that of an independent contractor and nothing in this Agreement shall be construed as creating a partnership, joint venture or employer-employee relationship. Contractor shall be solely responsible for complying with all applicable local, state and federal laws governing self-employed individuals, including but not limited to obligations such as payments of federal, state and local taxes, social security, disability and other contributions attributable to the rendition of Services hereunder to FFC. Contractor shall indemnify, hold harmless and defend FFC from any and all claims, liabilities, damages, taxes, fines or penalties sought or recovered by any governmental entity, including but not limited to the Internal Revenue Service or any state taxing authority, arising out of Contractor's alleged failure to pay such taxes or make such contributions. Nothing in this Agreement shall be deemed to constitute Contractor or FFC the agent of the other. Neither Contractor nor FFC shall be or become liable or bound by any representation, act or omission whatsoever of the other.

13.    NON-ASSIGNABILITY. Contractor shall not assign, transfer, or subcontract this Agreement or any of its obligations hereunder without FFC's express, prior written permission.

14.    NOTICES. All notices permitted or required under this Agreement shall be in writing and shall be by personal delivery, a nationally recognized overnight courier service, facsimile transmission or certified or registered mail, return receipt requested. Notices shall be deemed given upon the earlier of actual receipt or one (1) day after deposit with the courier service, receipt by sender of confirmation of electronic transmission or five (5) days after deposit

If to FFC:

Fuentes Fernández & Company, PSC
1001 Connecticut Ave. NW Suite 300
Washington DC 20036
Attention: Joseph A. Fuentes-Fernández, CPA

If to Contractor:

6060 Tower Court Apt. 907
Alexandria, VA 22304
Attention: Jonathan Cruz

15.    Severability. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, impaired or invalidated, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.    Governing Law. This agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to the conflict of laws provisions thereof.

17.    Integration. This agreement constitutes the entire agreement of the parties hereto and supersedes all prior and contemporaneous representations, proposals, discussions, and communications, whether oral or in writing. This agreement may be modified only in writing and shall be enforceable in accordance with its terms when signed by each of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have caused to be signed by their duly authorized representatives, as of the day and year first above mentioned.

FUENTES-FERNÁNDEZ & COMPANY                    JONATHAN CRUZ

By: _____                    By: _____
Name: Joseph A. Fuentes, CPA                    Name: Jonathan Cruz
Title: President & CEO                          Title: Accountant/Auditor

EHXIBIT "A"

THIS DOCUMENT IS THE STATEMENT OF WORK ("SOW") AS DEFINED IN SUBCONTRACTOR AGREEMENT ("Agreement"), dated as of August 22, 2006 (the "Effective Date"), between JONATHAN CRUZ ("Contractor"), and FUENTES-FERNÁNDEZ & COMPANY, PSC.

1.     PURPOSE OF PROJECT

CONTRACTOR WILL ASSIST, CABALLERO & CASTELLANOS IN PERFORMING FINANCIAL RECOVERY SUPPORT SERVICES FOR THE HOUSING AUTHORITY OF NEW ORLEANS.

2.     CONSULTANT'S RESPONSIBILITIES

THE CONTRACTOR WILL BE RESPONSIBLE TO PROVIDE, AMONG OTHER SERVICES, THE FOLLOWING SERVICES

- Transaction analysis and processing
- Data analysis and summarization
- Technical assistance in delivering new or revised accounting policies and procedures
- Accounting transactions classifications
- Special studies to improve accounting operations
- Accounting issues resolution
- Accounting internal control assessment or enhancement

3.     SCHEDULE

The term of the engagement extends from September 1, 2006, through August 31, 2009, on an as-needed basis.



**From:** castellanos@cc-cpa.net [mailto:castellanos@cc-cpa.net]
**Sent:** Friday, December 22, 2006 8:22 AM
**To:** joey@fuentes-fernandez.com
**Subject:** HANO

Joey,

I have been thinking long and hard on how to proceed.

I am extremely disappointed with the breach of trust that you showed in dealing with me and C&C under this contract. I spoke with my partners and they would have terminated on the spot. I however want to maintain a level of fairness in our business dealing.

I believe that this matter can not be resolved because it adds stress to an already stressful environment.

I believe that the fairest approach to this matter is to terminate FFC effective March 2, 2007. That is the end of a two week billing cycle and it provides FFC with a more than sixty (60) day window.

I am currently in communication with NTI and the money is making its way through the process. Frank stated that he was hoping to have everything settled very soon. I am pushing for no later than the first week in January.

Immediately upon receipt of these funds and processing to ensure proper reconciliation, C&C will make payment to FFC.

Regarding the HANO direct bill, FFC will be paid within three weeks of submission of invoices to HANO.

Again I will ensure that all elligible payments are made to FFC as timely as possible and will not Hold funds.

I regret that this business venture is ending in such a way. I feel that personally we may be able to still maintain some form of relationship but professionally, it will not be possible.

Please accept this as a formal communication of intent and advise me whether FFC will need a formal written letter from C&C.

Elias Castellanos, CPA
Partner
Caballero & Castellanos PL
13055 SW 21 Street
Miramar , Florida 33027
Phone: 305 775 4821
Fax: 954 827 3888



Citibank Tower, Suite 1401
252 Ponce de Leon Ave., San Juan, PR 00919
Tel. (787) 782-1311 • Fax (787) 273-1489
www.fuentes-fernandez.com
Mailing: PO Box 194669
San Juan, PR 00919-4669

**Fuentes Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS



PLAINTIFF'S
EXHIBIT
7B

Certified Public Accountants
Private Companies Practice
Section Division for CPA Firms

## BY HAND AND OVERNIGHT EXPRESS MAIL

January 26th, 2007

Mr. Elías Castellanos
Caballeros & Castellanos, PC
13055 SW 21st Street
Miramar, Florida 33027

Dear Mr. Castellanos:

Reference is made to your e-mail dated December 22, 2006, notifying the undersigned that Caballeros & Castellanos, PC (CC) was unilaterally terminating the contract it entered into with Fuentes-Fernandez & Company, PSC (FFC) due to an alleged "breach of trust".

It is imperative from the outset to single out, that it is deeply disturbing to read a written communication in which you to terminate a contract relying on clearly unfounded, unsupported and inapplicable facts. Because it is evident that you have not properly reviewed and assessed the facts and legal consequences of our existing contractual relationship, your abrupt and erratic actions I feel compelled to refresh your memory for the benefit of everyone that is directly and indirectly involved in the present situation.

As you should be able to recall, on June 18th, 2006 FFC received an e-mail communication from CC requesting junior auditors for the Financial Recovery Support Services at the Housing Authority of New Orleans (HANO). In addition, I received two e-mails dated June 19th and 20th, in which clearly established and properly defined the initial terms and conditions that would govern our contractual relationship; among them you should be able to recall the following:

- Three staff junior auditors would be subcontracted for our project, subcontracting a forth one later;
- A rate of $45 an hour for the above service category would be paid;
- Each junior auditor would receive a daily Per Diem of $230;
- Also, each junior auditor and staff member was entitled to a travel budget of up to $600 for every two weeks; and
- Our contractual relationship would have a Term of 3 years (See Attachment 1).

1

In addition to the above, you should also recall, that you sent to me two new emails in which you expressed, among other things, that you also "wanted to meet and build a business relationship", how you were "optimistic of our future opportunities", and that you wanted CC & FFC to "work as a team". (See Attachment 2)

Also, on July 18th, you requested FFC to confirm your proposed agreement by completing a required Letter of Intent (LOI) between CC & FFC in which among other things, we established the following:

- CC as prime contractor & FFC as subcontractor of CC
- IFB # 06-742-06-07
- Services: Financial Recovery Support Services
- Dollar Amount: $500,000 per year, therefore, total contract value of $1,500,000
- Terms: Net 30
- Commencement & Completion Date-August 18, 2006 to August 17, 2009 (See Attachment 3)

As your records and files should reflect, the above LOI was signed, notarized and sent to you at your offices on that same date. Said LOI, in essence, memorialized our previous agreement as a DBE subcontractor of CC, in which we agreed that five (5) days after receipt of your signed contract executed by HANO and CC, FFC would forward a copy of our Agreement to HANO's Compliance Officer at the Department of Procurement and Contract, which as you know, it has been done.

Even though FFC has fully complied with every obligation under the existing Agreement, CC has failed to honor the term of paying in net 30 days. Since the inception of our first invoice, dated June 30th and up to October 26th, of 2006, we encountered significant and repeated payment delays in all outstanding balances owed for services rendered. Notwithstanding, and in clear breach of contract, FFC kept an attitude of cooperation and support to CC's project management, particularly with those pertaining to billing and collection efforts under NTI's contract with CC.

During the above period of time, CC provided several explanations as to why payments to FFC were delayed, also, CC represented to FFC that they were working on obtaining a line of credit in order to "alleviate" the above payment problems and unnecessary disbursement delays. Notwithstanding the above explanations and representations, which FFC relied upon to render services and had no reason to doubt the same, as you well know, nothing ever happened and FFC continued suffering substantial economic damages due to CC's continued lack of payment and fulfillment of its contractual obligation.

Consequently, FFC ended up financing the entire operation during the referred to period of time. As you well know, CC's clear breach of its contractual obligations with FFC never advanced, in any way or form, its original aspiration to build on your originally suggested

**Fuentes-Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1001 Connecticut Ave. N.W., Suite 300, Washington, DC 20036 • Tel. (202) 861-1901 • Fax (202) 861-1904
www.fuentes-fernandez.com

2

"objective" as it pertained to our business relationship. Needless to say, the above exercise in good faith and fair dealing by FFC was specifically directed at building a team and a business relationship which now I am convinced were mere rhetorical statements to induce me to enter into a contractual relationship for reasons which I am beginning to perceive constitute blatant illegal conduct.

Moreover, it is important to mention, that FFC continued providing uninterrupted services to CC due to repeated (mis)representations to both the undersigned and to HANO, even though CC had outstanding payments at the time for over 90 days with FFC. Your failure to abide to the terms and conditions of our agreement escalated to such a precarious point, that said conduct started to affect and damage FFC's operation, especially, when FFC was unable to collect on a promised basis (net 30 days). To further illustrate the above point, please refer to our invoices for services rendered and expenses incurred for the month that ended on September 29th, 2006, which was just paid on January 5th, 2007, even though CC had been paid for the services that had been rendered and invoiced on December 22nd of 2006, and for the month ended October 29th, 2006, which was paid last Thursday, January 18th, 2007.

Furthermore, upon commencement and transition of CC's contract with HANO, on October 3rd, 2006, FFC was notified by CC of its intention of expediting all payments for all subcontractors from the above date on, accordingly, invoices had to be submitted every two weeks and CC would process and pay said invoices within two to three weeks of submission. Due to the significant outstanding balance that was owed to FFC of approximately $60,764, FFC also requested that said payment period be waived, until our company had been paid in full.

Due to the above scenario that FFC was confronting, on December 1st, I asked one of my employees, Mr. Juan Carlos Rivera, assigned to the Accounts Payable, whether or not CC had been paid the November 27th, 2006 invoice. Mr. Rivera informed me that the money had been wired by HANO to CC's account. Consequently, I called your wife and inquired if our payment for the latest billing period could be paid as well. During the above telephone conversation, your wife emphatically replied that CC had not been paid and I clarified that CC had been paid according to the information provided by my employee.

Immediately after the above telephone call had transpired, I received an email that same date from Mr. Orlando Rodriguez asking me if I had informed you about the information I had received from Juan about the wired funds that CC had received, because Juan had been transferred to the General Accounting Office and that he was not going to work any more at the Accounts Payable Office and that in the future he would be told why. Needless to say, the above situation created a big concern and instability among the staff members, who had always been rendering their respective services in a very diligent and careful manner, complying at all times with their assigned responsibilities. (See Attachment 4)

**Fuentes-Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1001 Connecticut Ave. N.W., Suite 300, Washington, DC 20036 • Tel. (202) 861-1901 • Fax (202) 861-1904
www.fuentes-fernandez.com

3

For reasons that merit no explanation, I called you and I asked you why Juan had been removed and that he had expressed his serious concern about his transfer. I also informed you that Juan had asked me, in an incredulous manner, if there was something wrong with me inquiring into the status of CC payment. Finally, I asked you that the next time something similar happened, I would sincerely appreciate if you would call me directly before taking any action in your own hands, so that we could resolve any matter of this kind among us.

Unaware of your alleged disappointment and unaware of your perception that FFC was in "breach of trust" and believing that we were working as partners under a long and mutual association, in good faith, I invited you to team with me for another proposal, when I received your unexpected and perturbing e-mail, dated December 20th, 2006, in which you stated that: **"I am not interested. With our current business relationship, I do not feel comfortable in seeking additional work with FFC. I'm still unhappy with the events that occurred recently and I am debating how to proceed"**. (See Attachment 5)

Needless to say, I really can not understand, and I simply fail to comprehend, what could have possibly created an "event" that could generate such a disturbing and incomprehensive behavior and response by both you and CC, and one that specifically changed our business relationship completely when the only thing FFC did is to cooperate and support CC's operation and needs at HANO at all times.

To add insult to injury, I received on December 22nd, 2006, your unfounded, unjustified and illegal termination, with an effective date of March 2nd, 2007, indicating, among other things, that this was the **"fairest approach to terminate FFC's contract with CC"**. (See Attachment 6)

First of all, I am under the impression that you have completely overlooked the fact that we have an existing contractual relationship that governs the margin of independent discretion that either of us may have to unilaterally amend our agreement and that you have completely failed to analyze the underlying facts that impede you from imposing your proposed adequate solution. For expediency and with the objective at focusing your attention to the real issues at hand, I feel compelled to remind you of the following:

1) FFC has an unequivocal and legal Agreement with CC;

2) The Agreement can not be terminated under your proposed unjustified and ridiculous pretext (the "event"). This is not an "event" in which FFC has breached any of the terms of our Agreement; and

3) During the term of this Agreement and or for a period of one (1) year after its termination, neither FFC nor CC shall solicit for hire as an employee, FFC's staff or otherwise, any of CC's personnel who have performed services under this Agreement or the Prime Contract without the other party's express written consent. As it has recently come to my attention that you tried, within the later part of 2006, to hire my

**Fuentes-Fernández & Company, P.S.C.**
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS
1001 Connecticut Ave. N.W., Suite 360, Washington, DC 20036 • Tel. (202) 861-1904 • Fax (202) 861-1904
www.fuentes-fernandez.com

4

employees and have offered them a position in CC this month, you are in clear material breach of our Agreement. To make things worst, all employees have a contract with FFC until August 2009, in accordance with the term of our Agreement, therefore, any breach from their part will be directly attributable to your improper and illegal interference, unnecessarily exposing you, CC and them to a possible legal claim for breach of contract and torts, among other causes of action.

Needless to say, I would sincerely appreciate if you could expend the necessary time reviewing all the documents that I am attaching to the present letter, and to reconsider your position regarding your illegal termination of our Agreement. If you do not respond to the present letter by Friday, February 2nd, 2007, close of business day, I will interpret the same as a clear rejection from CC and yourself of our intention of resolving the present controversy in an amiable and constructively manner and consequently, FFC will be compelled to proceed with the corresponding legal action, in the proper forum.

I sincerely hope that you see the wisdom in resolving the matter correctly and without the need of litigation.

Sincerely,


Joseph A Fuentes, CPA

Cc  Alfredo Castellanos- Castellanos & Castellanos Law Firm, PSC -- VIA FAX: 787-641-8450
    Caballeros & Castellanos, PC, 13055 SW 21st Street, Miramar, Florida  33027

Fuentes-Fernández & Company, P.S.C.
CERTIFIED PUBLIC ACCOUNTANTS & CONSULTANTS

1001 Connecticut Ave. N.W., Suite 300, Washington, DC 20036 • Tel. (202) 861-1901 • Fax (202) 861-1904
www.fuentes-fernandez.com

5

PLAINTIFF'S
EXHIBIT
B

February 1, 2007

To Whom It May Concern:

During January 27, 2007, we had a meeting between Joseph Fuentes, Orlando Rodriguez, Juan C Rivera, Adolfo Rivera, and Jonathan Cruz. We discussed the events that happened during the past six month when we started working for Fuentes Fernandez & Co. (FFC). Evidently, working for FFC has become from being a challenge to a constant concern. The commitment that we had at the beginning with FFC has been damaged with the constant failure of FFC complying with our agreement.

Even though we had problems, our work has been the same from the beginning and the delivery of our services have not lacked of the quality that distinguished ourselves from the beginning. When we did not receive our salary, we did not absent from work and never made an excuse not come to work. The problem of not receiving our salary on time was a constant that has never been fixed.

Like we expressed before, is our will to finish our business relations with FFC. During the meeting, we discussed the letter that we presented as resignation. In that letter we stipulate that FFC has 30 days to solve the problem that we have. If you do not comply with this, our relationship will end on February 16, 2007. If FFC complies, we will fulfill our contract and obligations until March 2, 2007.

### Background

We started working for FFC after we had a phone conversation with Mr. Fuentes during June 23, 2006. We reach an agreement as independent contractor and we will start working on June 26, 2006. When we arrive to New Orleans, we encountered many problems, specifically with accommodations. Mr. Fuentes did not make the reservation and did not inform us about this issue. We could not pay so another contractor who was staying at the hotel pay for us. The problem with the accommodation was constantly. In the three hotels that we stayed, (Sheraton, Double Tree, and Sun Suites) we had problems when they charged Mr. Fuentes credit card. In many occasions, the hotel changed the keys of our room, and we have been left out of the room. Even though Mr. Fuentes managed to pay the hotel, the burden of this constant was uncomfortable and it was an unnecessary concern for us. Even though we were embarrassed with this situation, we did our work and complied with our responsibilities. So now, we have to handle two problems: the accommodation and our salary.

Mr. Fuentes told us that he was not comfortable paying hotel every week, that from October we will rent an apartment. Renting the apartment will be better because it was a lesser amount to be paid and a one-time payment instead of an everyday call. Thirteen days after we move in, we received a notification that we had pay with non-sufficient fund check and that we had to pay in less than 24 hours. After we communicate this to Mr. Fuentes try to solve the issue but he could not solve it, which obligated us to pay our rent, and Jonathan Cruz rent as well. Mr. Fuentes did

not reimburse this money until 45 days later. This situation was very uncomfortable because the entire month of October we did not receive our salary. What it was a week burden became into a 30-day plus uncomfortable situation. This situation was very critical for us, so we proceed to notify that we were going finish our relation with FFC. Mr. Fuentes came during November to talk with us and he try to cure what it had became an unhealthy relationship. From that day, he said that our situation in New Orleans was going to change. We believe in him and the next couple of weeks we received our payments. It was until December 31 when Mr. Fuentes did not communicate with us, we felt that the situation was going backwards again.

There were many promises, like a health insurance plan, a 401K plan, and payments on time, transportation, and a better situation. However, all were promise and our needs as individual were not satisfied. We thought that this job was a healthy situation, but it turn to be unstable and a distraction and frustration.

We have been financing this project and FFC. We have paid rent and airfares, we have believed and trust FFC and Mr. Fuentes. However, FFC has let us down time after time. (Please Exhibit 1) Our responsibilities with FFC will finish either February 16 or March 2, 2007.

We work hard every day, and we been loyal to FFC. During this time neither Elias Castellanos, nor a CC partner, has offered us a position in CC. Our communications with Mr. Castellanos were work related issues. Even when we talked with Mr. Castellanos about our problems with FFC of being paid and receiving our money, he always advise us that we should talk and solve our issues with FFC. He never told us to jump to his company, nor to leave FFC.

Again, we are going to fulfill our commitment and responsibilities with FFC, if FFC complies with what we have requested. Until this time, we are not pursuing positions with other company in this engagement. After the date of termination we are free to pursue opportunities with any other company that we believe is going to enhance and develop our professional career. If you have any questions, please do not hesitate and contact us.

Sincerely,


Orlando Rodríguez                          Juan Carlos Rivera
Accountant/Auditor                         Accountant/Auditor
3734 Loyola Dr 260N                        3616 Loyola Dr 271S
Kenner, La 70065                           Kenner, La 70065
787-347-1398                               787-557-1958
guga_pr@yahoo.com                          juanriveracartagena@gmail.com


Attached is Exhibit 1

Exhibit 1

| Pay Date According to Contract | Date we received the payment | Note |
|---|---|---|
| 30-June-06 | 18-July-06 | We received payment 18 days later without expense disbursement |
| 15-July-06 | 18-July-06 | We received incomplete payment 3 days later without expense disbursement.  Two weeks later we received the difference in cash. |
| 30-July-06 | 31-July-06 | We have not received expense disbursement |
| 15-August-06 | 16- August -06 | We have not received expense disbursement. (51 days late) |
| 30-August-06 | 6- September -06 | We received payment 7 days later without expense disbursement |
| 15- September -06 | 20- September -06 | We received payment 5 days later without expense disbursement. |
| 30-September-06 | 6- October -06 | We received payment 6 days later without expense disbursement |
| 15- October -06 | 15-November -06 | We received payment 30 days later without expense disbursement |
| 30-October-06 | 22-November -06 | We received payment 23 days later.  The first disbursement of expenses was received. |
| 15- November -06 | 22- November -06 | We received salary of October and November |
| 30-November-06 | 5- December -06 | We received salary 6 days later.  This was after we were guaranteed that payments won't be late again. |
| 15- December -06 | 20-December-06 | We received payment Paid 5 days later. |
| 30- December -06 | 20- January -07 | We received payment 20 days later (Jonathan and Adolfo received payment before us, and they were told not to tell us) |
| 15-January-2007 | 27- January -07 | We received payment 12 days later; after we were told that we have to go to a meeting in DC. We received payment of January, and Expenses owe since September.  (Still pending bonus payable on December 2006) |

February 1, 2007

To Whom It May Concern:

During July 24, 2006, I entered into an agreement with Fuentes Fernandez & Company, PSC (FFC) as an independent contractor. Under this agreement, we were going to provide service to Caballero and Castellanos, PC (CC) related to the financial recovery of the Housing Authority of New Orleans. This agreement requires my service up to August 31, 2009 or when the contract with the prime contractor CC, is terminated.

Last week I was informed that the contract would end on March 2, 2007. Until this period, my responsibilities with FFC will be fulfilled and I will have terminated my contract and obligations with FFC.

During the time that I worked for FFC, neither Elias Castellanos nor any partner of CC has offered me a position in CC. My conversations with Mr. Castellanos have been entirely about work related issues.

Because my relation with FFC will end on March 2, 2007, I will not pursue a position with CC or other firms involved in this engagement. After March 2, 2007, I am free to pursue position in any company that I believe it will enhance and advance my professional career. If you have any concerns or questions, do not hesitate and contact me.

Sincerely,

Jonathan T Cruz
Accountant/Auditor
6060 Tower Ct Apt 504
Alexandria, Va 22304
571-438-8139
jcruz@hano.org
jonathancruzsanchez@yahoo.com